# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION AT DAYTON

RICKY SMITH,

                             :

            Petitioner,                    Case No. 1:11-cv-240

                             :            District Judge Michael R. Barrett

       -vs-                                     Magistrate Judge Michael R. Merz

WARDEN, Lebanon Correctional
  Institution,

                             :

           Respondent.

---

## REPORT AND RECOMMENDATIONS

---

        This is a habeas corpus case brought pursuant to 28 U.S.C. § 2254. Petitioner seeks relief from his conviction for murder in the Hamilton County Common Pleas Court. He pleads the following Grounds for Relief:

> **Ground One:** Insufficient Evidence.
>
> **Supporting Facts:** No evidence exists to support conviction, no DNA, fingerprints, or other evidence. Many eyewitnesses were present but none saw petitioner stab the victim. Court specifically started that State did not prove who stabbed the victim.
>
> **Ground Two:** Improper evidentiary rulings.
>
> **Supporting Facts:** The trial court improperly denied petitioner's motion to suppress identification. The court permitted the State to impeach the petitioner at trial by use of "STALE" prior convictions over 10 years old, violating Evid. R. 609 B. The trial court erred in overruling several motions for a New Trial on meritorious claims, all of which violates the petitioner's right to a fair trial and the due process of law guaranteed him by the 5th and 14th amendment.

**Ground Three:** Prosecutorial Misconduct

**Supporting Facts:** A) Prosecutor appealed to incite passion of jury in opening statement of telling jury they were sitting in same room with "murders" [sic] Also making several references to the bible and religion. He improperly delgrated [sic] defense integrity, calling the petitioner's defense "senseless", the prosecutor speculated on what happened, pointed out that petitioner did not testify or present any evidence all of which violate the petitioner's constitutional right to a fair trial and the due process of law guaranteed him by the 5th and 14th amendment.

**Ground Four**: Court refused to instruct on lesser included offenses but did indtruct [sic] on aiding and abetting/complicity.

**Supporting Facts:** The court refused to allow lesser included instructions on either involuntary manslaughter or voluntary manslaughter despite the fact that evidence was adduced at trial to support those instructions. The court did instruct on aiding and abetting/complicity despite the fact that the petitioner was not indicted on either charge. All of which violates the petitioner's constitutional right to a fair trial and the due process of law guaranteed him by the 5th and 14th amendment.

**Ground Five:** Ineffective Assistance of Trial Counsel.

**Supporting Facts:** Counsel failed to investigate and present potentially exculpatory evidence which was volunteered to him, this violated the petitioner's constitutional right to a fair trial, the effective assistance of counsel and the due process of law guaranteed him by the 5th, 6th, and 14th amendment.

(Petition, Doc. No. 1, PageID 5-16.) On Judge Litkovitz's Order, the Warden has filed a Return of Writ (Doc. No. 10). Petitioner then filed a Reply with the assistance of counsel who now represents him in this case (Doc. No. 14).

## Procedural History

Petitioner Ricky Smith and his brother Roger were jointly indicted in 2007 for the stabbing death of Rodney Gorley. A motion to suppress pretrial identification was denied and the case proceeded to trial, with a jury convicting Petitioner of both counts of murder in the indictment. Petitioner filed four motions for new trial which were all denied. Appeal from denial of those motions was consolidated with the original direct appeal. The court of appeals sustained the eighth assignment of error and required merger of both counts and re-sentencing. Petitioner appealed from denial of the other assignments of error, but the Supreme Court declined jurisdiction.

While his request for review was pending in the Supreme Court, Petitioner filed a fifth motion for new trial which was overruled. Subsequent appeals to the First District Court of Appeals and the Ohio Supreme Court were unsuccessful. In January 2009 Petitioner filed for post-conviction relief under Ohio Revised Code § 2953.21. Appeals from denial were unsuccessful at both appellate levels. Petitioner then filed in this Court.

## Ground One

In his First Ground for Relief, Petitioner asserts he was convicted on insufficient evidence. This Ground states a claim for relief under the Fourteenth Amendment. *Jackson v. Virginia*, 443 U.S. 307 (1979); *In re Winship*, 397 U.S. 358 (1970); *Johnson v. Coyle*, 200 F.3d 987, 991 (6th Cir. 2000); *Bagby v. Sowders,* 894 F.2d 792, 794 (6th Cir. 1990)(en banc). In order for a conviction to be constitutionally sound, every element of the crime must be proved beyond a reasonable doubt.

*In re Winship*, 397 U.S. at 364.

> [T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt . . . . This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence and to draw reasonable inferences from basic facts to ultimate facts.

*Jackson v. Virginia*, 443 U.S. at 319; *United States v. Paige,* 470 F.3d 603, 608 (6th Cir. 2006);

*United States v. Somerset*, No. 3:03-po-002, 2007 U.S. Dist. LEXIS 76699 (S.D. Ohio Oct. 12,

2007). This rule was adopted as a matter of Ohio law at *State v. Jenks*, 61 Ohio St. 3d 259, 574 N.E.

2d 492 (1991). Of course, it is state law which determines the elements of offenses; but once the

state has adopted the elements, it must then prove each of them beyond a reasonable doubt. *In re*

*Winship, supra.*

In sufficiency of the evidence cases after enactment of the Antiterrorism and Effective Death

Penalty Act of 1996 (Pub. L. No 104-132, 110 Stat. 1214)(the "AEDPA"), two levels of deference

to state court decisions are required:

> In an appeal from a denial of habeas relief, in which a petitioner challenges the constitutional sufficiency of the evidence used to convict him, we are thus bound by two layers of deference to groups who might view facts differently than we would. First, as in all sufficiency-of-the-evidence challenges, we must determine whether, viewing the trial testimony and exhibits in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. See *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979). In doing so, we do not reweigh the evidence, re-evaluate the credibility of witnesses, or substitute our judgment for that of the jury. See *United States v. Hilliard*, 11 F.3d 618, 620 (6th Cir. 1993). Thus, even though we might have not voted to convict a defendant had we participated in jury deliberations, we must uphold the jury verdict if any rational trier of fact could have found the defendant guilty after resolving all disputes in favor of the prosecution. Second,

> even were we to conclude that a rational trier of fact could not have
> found a petitioner guilty beyond a reasonable doubt, on habeas
> review, we must still defer to the state appellate court's sufficiency
> determination as long as it is not unreasonable. See 28 U.S.C. §
> 2254(d)(2).

*Brown v. Konteh,* 567 F.3d 191, 205 (6th Cir. 2009). In a sufficiency of the evidence habeas corpus

case, deference should be given to the trier-of-fact's verdict under *Jackson v. Virginia* and then to

the appellate court's consideration of that verdict, as commanded by AEDPA. *Tucker v. Palmer*, 541

F.3d 652 (6th Cir. 2008).

The relevant facts found by the First District Court of Appeals are as follows:

> At the trial, the state presented testimony from three eyewitnesses:
> Markuita Dale, Rasheka Smith, and Kristal Williams. The women
> testified that in the evening hours of August 23, 2007, Gorley had
> walked to Kristal's home to use her phone. Kristal was sitting on her
> front porch talking and drinking alcohol with Rasheka and Marquita.
> After Gorley had made his phone call, as he sat on the front porch
> talking to the three women, Roger Smith walked by. Roger
> exchanged some words with Gorley and left. Roger gave Gorley a
> nasty look, but Gorley just laughed at him.
>
> A short time later, Ricky Smith approached Gorley as he was
> stepping off the porch. Ricky attacked Gorley from his blind side and
> started hitting him on the head with a hammer. Roger then joined in
> the attack and repeatedly "punched" or stabbed Gorley in the chest.
> Gorley, a big man, was able to body-slam the brothers a few times
> before he ultimately fell bleeding to the ground. The three women,
> who had witnessed the attack, called the police. Ricky and Roger
> then fled from the area.
>
> When the police arrived, they found Gorley lying unconscious,
> face-down in Kristal's front yard next to a chain-link fence. His
> clothes were covered in blood. He had extensive wounds to his head
> and was struggling to breathe. Gorley was transported to University
> Hospital for treatment, but he died three days later.
>
> Shortly thereafter, the police began to search the surrounding area.
> They found a serrated knife blade lying in a pool of blood in the grass

on the west side of Kristal's home, as well as a foot print and a skullcap or dorag. They also recovered a bloody knife handle near the driver's-side door of a red pickup that had been parked in the back of Roger's residence. The police also interviewed Kristal, Markuita, and Rasheka. They each told police that Ricky had attacked Gorley with a hammer, while Roger had punched Gorley in the chest. The following day, the women were shown two separate photo arrays. They each individually identified Roger and Ricky as the perpetrators.

The police arrested Roger at his home that afternoon. He was transported to the police station for questioning. During Roger's interview, the police observed some cuts and abrasions on his face, his left hand, and his body. They also saw blood splotches on his jeans and collected the jeans for testing. They sought and obtained Roger's permission to search his home. During the search, they recovered from his bedroom a pair of gym shoes that had spots of blood on them. Two days later, the police apprehended Ricky in an abandoned apartment building where he had been hiding.

Dr. Gretel Stephens, a forensic pathologist for the Hamilton County Coroner's Office, conducted an autopsy on Gorley. Stephens testified that Gorley had suffered a number of semicircular lacerations on his head caused by the round end of a hammer. According to Stephens, Gorley had been struck in the head no fewer than seven times. These head injuries had not caused his death, but they would have rendered him dazed or unconscious. She further testified that, had Gorley lived, the wounds to his head would have formed permanent scars and would have caused him pain for a number of weeks. Stephens testified that Gorley had also suffered a stab wound to his heart. He died from anoxic encephalopathy due to complications from that stab wound.

Michael Trimpe, a trace-evidence examiner at the Hamilton County crime lab, examined the knife blade and handle that police had recovered. He testified that the blade and handle physically fit together and that the knife had been in a bent position when the handle had broken from the blade.

Tracy Sundermeir, a serologist for the Hamilton County Coroner's Office, performed DNA testing on Roger's jeans and tennis shoes, the knife blade, and the knife handle. She testified that there was a mixture of Gorley's and Roger's blood on Roger's jeans and Roger's left tennis shoe, and that Gorley's blood was on both the knife blade

and handle, as well as on Roger's right tennis shoe.

John Mulholland, a crime-scene investigator for the Hamilton County Sheriff's Office, also tested the knife blade and handle for latent fingerprints. He testified that he had been unable to get enough ridge details from the blade or the handle to lift a fingerprint from either item. He explained that he had examined the knife and blade after the serologist had tested them for DNA evidence, and that testing would have obliterated any ridge detail on the two items.

*State v. Smith,* Nos. C-080712, C-090505, 2009 Ohio 6932, ¶¶ 2-10, 2009 Ohio App. LEXIS 5865

(Ohio App. 1st Dist. Dec. 31, 2009).

Petitioner raised insufficiency of the evidence as the fifth assignment of error on direct

appeal. The court of appeals decided that assignment as follows:

[*P34] In his fifth assignment of error, Ricky argues that his murder convictions were based upon insufficient evidence and were against the manifest weight of the evidence.

[*P35] Ricky was found guilty of murder under R.C. 2903.02(A), which provides that "[n]o person shall purposely cause the death of another." Ricky was also found guilty of felony murder under R.C. 2903.02(B), which provides that "[n]o person shall cause the death of another as a proximate result of the offender's committing or attempting to commit an offense of violence that is a felony of the first or second degree." In this case, Ricky was found guilty of causing Gorley's death while committing felonious assault under R.C. 2903.11(A)(1). The felonious-assault statute provides that "[n]o person shall knowingly cause serious physical harm to another."

[*P36] After viewing the evidence in a light most favorable to the prosecution, we hold that a rational trier of fact could have reasonably concluded that state had proved the essential elements of murder and felony murder beyond a reasonable doubt. Three eyewitnesses testified that Ricky had attacked an unarmed Gorley without any provocation and had repeatedly hit him on the head with a hammer, while his brother had stabbed him in the heart with a knife. . . . As a result, we overrule his fifth assignment of error.

*State v. Smith, supra.* Petitioner's counsel does not argue the sufficiency of evidence claim in the

Reply (Doc. No. 14).

When a state court decides on the merits a federal constitutional claim later presented to a federal habeas court, the federal court must defer to the state court decision unless that decision is contrary to or an objectively unreasonable application of clearly established precedent of the United States Supreme Court. 28 U.S.C. § 2254(d)(1); *Harrington v. Richter*, 562 U.S. ___, 131 S. Ct. 770, 785 (2011); *Brown v. Payton,* 544 U.S. 133, 140 (2005); *Bell v. Cone*, 535 U.S. 685, 693-94 (2002); *Williams (Terry) v. Taylor,* 529 U.S. 362, 379 (2000).

Upon review on the merits, this Court concludes the state court of appeals decision is not an objectively unreasonable application of *Jackson v. Virginia, supra,* or an unreasonable determination of the facts based on the evidence before that court. Three eyewitnesses saw Ricky and Roger Smith attack Rodney Gorley with the Petitioner beating Gorley in the head with a hammer while his brother struck Gorley in the chest. Gorley's blood was on Roger Smith's pants. The murder weapon – identified by Gorley's blood – was recovered and introduced in evidence. Three eyewitnesses are clearly sufficient, given the corroborating physical evidence. Even though they did not see Petitioner stab Gorley, they plainly observed him in a "joint enterprise" with his brother to attack Gorley and Gorley was clearly stabbed to death during the attack. As the Warden points out (Return of Writ, Doc. No. 10, PageID 72), Ohio law allows an aider and abettor to be convicted as the principal offender if he acts with the level of mens rea required for the principal offense and repeatedly beating a man in the head with a hammer is sufficient evidence of an intention to kill him.

Petitioner's First Ground for Relief should be denied with prejudice.

# Ground Two

In his Second Ground for Relief, Petitioner claims error in several evidentiary rulings: denial of the motion to suppress identification testimony, allowance of stale convictions for impeachment, and denial of the motions for new trial.

## Improper Identification

As his first sub-claim, Petitioner asserts the trial court erred in denying his motion to suppress the eyewitness identification. This was his first assignment of error on direct appeal and the court of appeals decided:

> [*P15]  In his first assignment of error, Ricky argues that the trial court should have suppressed the identification testimony of Kristal Williams, Markuita Dale, and Rasheka Smith because their identifications had resulted from unduly suggestive photo arrays.

> [*P16]  In determining the admissibility of a pretrial identification of a suspect by a witness, this court engages in a two-step analysis. *See State v. Keeling,* 1st. Dist. No. C-010610, 2002 Ohio 3299, P14. First, we must determine whether the identification procedure was impermissibly suggestive. *See Id.*  Second, if the procedure was impermissibly suggestive, we must determine if there was a substantial likelihood of irreparable misidentification. *See Id.* at ¶ 15. The defendant bears the burden of proving that the identification procedures were impermissibly suggestive and that the resulting identification was unreliable. *See State v. Harris*, 1st Dist. No. C-040483, 2005 Ohio 6995, P34. If the defendant fails to satisfy the first burden, then we need not address whether there was a substantial likelihood of irreparable misidentification. *See State v. Green* (1996), 117 Ohio App.3d 644, 653, 691 N.E.2d 316.

> [*P17]  At the suppression hearing, all three women testified that they had spoken with the police on the night that Gorley had been fatally injured, and that they had identified Ricky and Roger as the two men who had been fighting with Gorley. The women told the

police that they knew both men from the neighborhood. The following day, the police stopped by Kristal's home with two separate photo arrays. The women each selected Ricky and Roger's photographs from the arrays.

[*P18] Yet defense counsel only questioned Rasheka about the manner in which the police had shown her the photo array. Rasheka testified that the women had separately viewed the arrays, and that at no time during their viewing of the arrays had the police suggested which photograph to choose. At the conclusion of the hearing, the trial court overruled Ricky's motion to suppress because he had failed to prove that the identification procedures were unduly suggestive.

[*P19] Based on our review of the record, we agree with the trial court. Ricky failed to demonstrate that the manner in which the police presented the photo arrays to the three women was unduly suggestive. As a result, we need not inquire into the reliability of the women's identifications. Consequently, we overrule his first assignment of error.

*State v. Smith, supra*, ¶¶ 15-19. Petitioner's counsel does not argue this sub-claim in the Reply.

Although the court of appeals cited only state court precedent in his decision, this Court concludes that the decision is neither contrary to nor an objectively unreasonable application of the relevant Supreme Court precedent.

The Supreme Court held in *Neil v. Biggers*, 409 U.S. 188 (1972):

[T]he factors to be considered in evaluating the likelihood of misidentification include the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation.

409 U.S. at 199; *accord, Manson v. Brathwaite*, 432 U.S. 98, 114 (1977). An identification procedure violates a defendant's right to due process if it "was so unnecessarily suggestive as to run the risk of irreparable mistaken identification." *Howard v. Bouchard*, 405 F. 3d 459, 469 (6th Cir. 2005). Even if an identification procedure was impermissibly suggestive, the identification is still

admissible if it is reliable.  *Id.*  at 469, 472.  In *Perry v. New Hampshire*, 565 U.S. ___, 132 S. Ct. 716, 181 L. Ed. 2d 694, (2012), the Supreme Court reiterated earlier this year that pretrial screening of eyewitness testimony for reliability is required only when the police have arranged suggestive circumstances which lead to the identification.

This sub-claim should be dismissed with prejudice.

**Stale Convictions**

[*P20]  In his second assignment of error, Ricky argues that the trial court erred when it permitted the state to impeach him with convictions that were more than ten years old, because it discouraged him from testifying and hindered his defense.

 [*P21]  In April 2008, the state filed a notice of its intention to use evidence of Ricky's prior convictions that fell outside the ten-year time limit in Evid.R. 609(B). The proffered evidence included prior convictions for aggravated robbery, drug trafficking, and drug possession. A few days before trial, the trial court heard argument on the notice and indicated it was inclined to allow the state to use the evidence because its probative value likely outweighed its prejudicial effect. The court stated, however, that it had not reviewed Ricky's prior convictions and asked the state to provide certified copies of those convictions. The court then stated that its preliminary ruling "might have to be fine-tuned" if the issue arose at trial.

 [*P22]  After the trial had begun, Ricky's counsel moved to exclude the prior-conviction evidence, arguing that its admission would prevent Ricky from testifying. In response, the court stated that it would "review what records it deem[ed] appropriate to put in [evidence] at a later time." At the conclusion of the state's case, Ricky's counsel told the court that Ricky had decided not to testify.

 [*P23]  The record does not indicate why Ricky chose not to testify. His decision might have been made "simply out of fear that he w[ould] look bad by clever counsel." *Portuondo v. Agard* (2000), 529

U.S. 61, 67, 120 S.Ct. 1119, 146 L. Ed. 2d 47. Or he might have feared that, even without the use of the stale convictions, the jury might have been swayed by his prior "non-stale" conviction for possession of marijuana. But whatever Ricky's reasons might have been, the trial court never had the opportunity to consider each of his out-of-time convictions to determine whether, in the interests of justice, the probative value of each substantially outweighed its prejudicial effect. As a result, we need not determine if the trial court abused its discretion in making a preliminary ruling on the issue. We, therefore, overrule the second assignment of error.

*State v. Smith, supra*, ¶¶ 21-23. Petitioner's counsel does not argue this sub-claim in the Reply. To the extent that this is a claim under Ohio Evid. R. 609(B), it is not a claim cognizable under the United States Constitution. Federal habeas corpus is available only to correct federal constitutional violations. 28 U.S.C. §2254(a); *Wilson v. Corcoran,* 562 U.S. ___, 131 S. Ct. 13; 178 L. Ed. 2d 276 (2010)*;Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); *Smith v. Phillips*, 455 U.S. 209 (1982), *Barclay v. Florida,* 463 U.S. 939 (1983). "[I]t is not the province of a federal habeas court to reexamine state court determinations on state law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).

When a defendant does not actually take the stand, the question of the admissibility of prior convictions for impeachment is not preserved even for direct appeal because any possible harm is speculative. *Luce v. United States*, 469 U.S. 38, 41 (1984).

Therefore the stale convictions sub-claim should be dismissed with prejudice.

**New Trial Motions**

Petitioner filed five motions for new trial in the Common Pleas court, all of which were denied. Four of these were before the court of appeals at the same time as the direct appeal and were presented as the seventh assignment of error. The court of appeals affirmed as to the first three motions because they raised claims that court had decided on the merits – insufficient evidence and the jury instruction on aiding and abetting. *State v. Smith, supra*, ¶ 41. The fourth motion raised a claim of juror misconduct and the court of appeals found the affidavit regarding the incident did not demonstrate misconduct and the motion was in any event untimely. *Id.* at ¶ 42.

Whether to grant a motion for new trial is within the discretion of the trial court under Ohio R. Crim. P. 33. There is no federal constitutional right to a new trial nor does it state a claim for federal habeas relief to allege that a state court has abused its discretion. *See Pudelski v. Wilson*, 576 F.3d 595 (6th Cir. 2009); *Sinistaj v. Burt,* 66 F.3d 804 (6th Cir. 1995).

As to the fifth motion for new trial, the Warden asserts Petitioner procedurally defaulted on any constitutional claims made in that motion because he failed to timely appeal from its denial.

The procedural default defense in habeas corpus is described by the Supreme Court as follows:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an adequate and independent state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause of the default and actual prejudice as a result of the alleged violation of federal law; or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *see also Simpson v. Jones,* 238 F.3d 399, 406 (6th Cir. 2000). That is, a petitioner may not raise on federal habeas a federal constitutional right he

could not raise in state court because of procedural default. *Wainwright v. Sykes*, 433 U.S. 72 (1977); *Engle v. Isaac*, 456 U.S. 107 (1982). Absent cause and prejudice, a federal habeas petitioner who fails to comply with a State's rules of procedure waives his right to federal habeas corpus review. *Boyle v. Million*, 201 F.3d 711, 716 (6th Cir. 2000); *Murray v. Carrier*, 477 U.S. 478, 485 (1986); *Engle v. Isaac*, 456 U.S. 107 (1982); *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977). *Wainwright* replaced the "deliberate bypass" standard of *Fay v. Noia,* 372 U.S. 391 (1963).

The Sixth Circuit Court of Appeals requires a four-part analysis when the State alleges a habeas claim is precluded by procedural default. *Guilmette v. Howes,* 624 F.3d 286, 290 (6th Cir. 2010)(*en banc*); *Eley v. Bagley*, 604 F.3d 958 (6th Cir. 2010); *Reynolds v. Berry*, 146 F.3d 345, 347-48 (6th Cir. 1998), *citing Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986); *accord Lott v. Coyle*, 261 F.3d 594 (6th Cir. 2001); *Jacobs v. Mohr*, 265 F.3d 407 (6th Cir. 2001).

> First the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule.
>
> . . . .
>
> Second, the court must decide whether the state courts actually enforced the state procedural sanction, citing *County Court of Ulster County v. Allen*, 442 U.S. 140, 149, 99 S.Ct. 2213, 60 L.Ed.2d 777 (1979).
>
> Third, the court must decide whether the state procedural forfeiture is an "adequate and independent" state ground on which the state can rely to foreclose review of a federal constitutional claim.
>
> Once the court determines that a state procedural rule was not complied with and that the rule was an adequate and independent state ground, then the petitioner must demonstrate under *Sykes* that there was "cause" for him to not follow the procedural rule and that he was actually prejudiced by the alleged constitutional error.

*Maupin,* 785 F.2d at 138. Petitioner's counsel does not respond to the procedural default argument

on this sub-claim in the Reply. The court of appeals found that Petitioner's appeal from denial of

the fifth motion for new trial was untimely and the delay was unexcused. Ohio has a rule requiring

that an appeal be taken within a limited period of time and that rule was enforced against Petitioner

as to his fifth motion for new trial. The State's interest in setting deadlines for filing appeals is

obvious and independent of any federal question. Therefore the Magistrate Judge concludes the

portion of this sub-claim relating to the fifth motion for new trial is procedurally defaulted and

should be dismissed with prejudice.


**Ground Three**


In his Third Ground for Relief, Petitioner asserts he was denied due process by prosecutorial

misconduct. This was his third assignment of error on direct appeal, which the court of appeals

decided as follows:

> [*P24] In his third assignment of error, Ricky argues that he was
> denied due process and the right to a fair trial by remarks made by the
> assistant prosecuting attorney during opening statement and closing
> argument.
>
> [*P25] "Whether a prosecutor's remarks at trial require a reversal of
> a conviction requires an analysis as to (1) whether the remarks were
> improper and (2) if so, whether the remarks prejudicially affected the
> accused's substantial rights. The touchstone of the analysis 'is the
> fairness of the trial, not the culpability of the prosecutor.'" *State v.
> Jackson*, 107 Ohio St.3d 53, 2005 Ohio 5981, 836 N.E.2d 1173, P108
> (internal citations omitted).
> [*P26] Ricky first argues that the prosecutor acted improperly in
> opening argument when he told the jurors that they were sitting in the

room with "murderers," and when he later referred to the Bible. Ricky also argues that, during his closing argument, the assistant prosecutor made remarks that improperly denigrated defense counsel, misstated the evidence, and cited evidence that was not in the record. Finally, he argues that the assistant prosecutor improperly stated that the "only evidence heard in this case is the evidence from the State of Ohio and not one bit of it is incredible or unbelievable."

[*P27] The record reveals that Ricky did not object at trial to any of the assistant prosecutor's remarks, except the last one. The trial court sustained the one objection and instructed the jury not to consider Ricky's failure to testify for any reason. Given the trial court's corrective action, Ricky cannot demonstrate that he was materially prejudiced by the last remark. *See State v. Ferguson* (1983), 5 Ohio St.3d 160, 163, 5 Ohio B. 380, 450 N.E.2d 265.

[*P28] Furthermore, based upon our review of the record, we are not convinced that the assistant prosecutor's remaining remarks, when considered individually or collectively, rose to the level of plain error. As a result, we overrule the third assignment of error.

*State v. Smith, supra*, ¶¶ 24-28.

The Warden asserts that this claim is procedurally defaulted except for the part relating to the very last comment by the prosecutor that only the State produced any evidence (Return of Writ, Doc. No. 10, PageID 82-84.) The Warden's asserted procedural default here is that there was no contemporaneous objection. *Id.*

Petitioner replies that "[t]his claim is not procedurally defaulted because the Petitioner relied on state cases that employed constitutional analysis in a similar factual context." (Reply, Doc. No. 14, PageID 1570). However, the Warden's asserted default is lack of contemporaneous objection, not lack of fair presentation. Hence Petitioner's Reply does not meet the defense.

With respect to most of the objected-to comments, the court of appeals enforced the contemporaneous objection rule. Ohio's contemporaneous objection rule — that parties must preserve errors for appeal by calling them to the attention of the trial court at a time when the error

-16-

could have been avoided or corrected, set forth in *State v. Glaros*, 170 Ohio St. 471 (1960), paragraph one of the syllabus; *see also State v. Mason*, 82 Ohio St. 3d 144, 162 (1998) — is an adequate and independent state ground of decision. *Wogenstahl v. Mitchell*, ___ F.3d ___, 2012 U.S. App. LEXIS 1905 *64 (February 2, 2012)(*citing Keith v. Mitchell*, 455 F.3d 662, 673 (6th Cir. 2006); *Nields v. Bradshaw*, 482 F.3d 442 (6th Cir. 2007); *Biros v. Bagley,* 422 F.3d 379, 387 (6th Cir. 2005); *Mason v. Mitchell*, 320 F.3d 604 (6th Cir. 2003), *citing Hinkle v. Randle*, 271 F.3d 239, 244 (6th Cir. 2001); *Scott v. Mitchell*, 209 F.3d 854 (6th Cir. 2000), *citing Engle v. Isaac,* 456 U.S. 107, 124-29 (1982). *See also Seymour v. Walker*, 224 F.3d 542, 557 (6th Cir. 2000); *Goodwin v. Johnson*, 632 F.3d 301, 315 (6th Cir. 2011); *Smith v. Bradshaw*, 591 F.3d 517, 522 (6th Cir.), *cert. denied*, 131 S. Ct. 185 (2010). Petitioner has offered no excusing cause and prejudice. Therefore most of the prosecutorial misconduct claim is barred by procedural default – the lack of contemporaneous objection.

The court of appeals reached the merits of the claim regarding the prosecutor's remark that the "only evidence heard in this case is the evidence from the State of Ohio and not one bit of it is incredible or unbelievable." It noted that the trial judge had instructed the jury not to consider the fact that Petitioner did not testify for any purpose and concluded that dissipated any possible prejudice. *State v. Smith, supra*, ¶ 27. The prosecutor's comment that the defense presented no evidence was true and far broader than a comment directed specifically at Petitioner's failure to testify. Since a curative instruction was given, the court of appeals decision that there was no prejudicial error is not an unreasonable application of clearly established federal law. *See Joseph v. Coyle*, 469 F.3d 441, 473-64 (6th Cir. 2006).

Ground Three should be dismissed with prejudice.

In his Fourth Ground for Relief, Petitioner complains that the trial court refused to instruct on lesser included offenses of voluntary and involuntary manslaughter, but did instruct on aiding and abetting although that was not charged in the indictment.

**Lesser Included Offenses**

This was Petitioner's fourth assignment of error on direct appeal and the court of appeals found it procedurally defaulted by counsel's failure to request the lesser-included instructions or to object to the instructions as a whole after they were given. *State v. Smith, supra,* ¶¶ 29-30. It therefore reviewed the allegedly erroneous instructions only for plain error and found none. *Id.* at ¶ 31.

The Warden asserts two procedural default defenses to this claim: lack of contemporaneous objection and failure to fairly present the claim in federal constitutional terms to the state courts (Return of Writ, Doc. No. 10, PageID 88-91.) The Reply asserts that all of these claims were presented to the state courts as constitutional claims, but then fails to cite any portion of the record in support of that position (Reply, Doc. No. 14, PageID 1568). The Court declines to examine the appellate brief because the Reply makes no response at all to the contemporaneous objection default. Based on the authority cited above, the contemporaneous objection rule exists in Ohio, is regularly followed, was followed in this case, and is an adequate and independent state ground of decision. Analysis of the assignment of error for plain error here constituted an enforcement of the

contemporaneous objection rule, not an excusing of it. A state appellate court's review for plain error is enforcement, not waiver, of a procedural default. *Wogenstahl v. Mitchell,* ___ F.3d ___, 2012 U.S. App. LEXIS 1905 *70 (February 2, 2012); *Jells v. Mitchell,* 538 F.3d 478, 511 (6th Cir. 2008); *Lundgren v. Mitchell,* 440 F.3d 754, 765 (6th Cir. 2006); *White v. Mitchell,* 431 F.3d 517, 525 (6th Cir. 2005); *Biros v. Bagley*, 422 F.3d 379, 387 (6th Cir. 2005); *Hinkle v. Randle,* 271 F.3d 239 (6th Cir. 2001), *citing Seymour v. Walker*, 224 F.3d 542, 557 (6th Cir. 2000)(plain error review does not constitute a waiver of procedural default); *accord, Mason v. Mitchell,* 320 F.3d 604 (6th Cir. 2003). Petitioner procedurally defaulted on this portion of his Fourth Claim for Relief.

**Aiding and Abetting**

The court of appeals decided the aiding and abetting assignment of error on the merits, holding:

> [*P33] Nor can we conclude that the trial court committed error when it instructed the jury on aiding and abetting. Contrary to Ricky's assertions, a defendant can be convicted of complicity even though he is charged in the indictment only as a principal offender. *See State v. Tumbleson* (1995), 105 Ohio App.3d 693, 664 N.E.2d 1318; see, also, *State v. Ensman* (1991), 77 Ohio App.3d 701, 603 N.E.2d 303. Furthermore, the state presented ample evidence that Ricky had acted in concert with Roger during their attack upon Gorley. As a result, the trial court's jury instruction on complicity was proper. We, therefore, overrule Ricky's fourth assignment of error.

*State v. Smith, supra,* ¶ 33. The Reply makes no comment on the aiding and abetting claim and the Court finds that the court of appeals' decision is not an unreasonable application of clearly established federal law. There is no federal constitutional right to a grand jury indictment in state

prosecutions. *Hurtado v. California*, 110 U.S. 516 (1884); *Branzburg v. Hayes,* 408 U.S. 665, 687-88 n. 25 (1972); *Gerstein v. Pugh,* 420 U.S. 103 (1975). The indictment which Petitioner received gave him adequate notice of the charges against which he had to defend himself. Ground Four should be dismissed with prejudice.

## Ground Five

In his Fifth Ground for Relief, Petitioner asserts his trial attorney provided ineffective assistance of counsel when he did not investigate and call witnesses with potentially exculpatory evidence. The witnesses in question are Jeffrey Mackay and Willie Brown who would have testified that the victim, Rodney Gorley, carried a knife and that there had been a previous confrontation between Gorley and Roger Smith. This claim was raised in Mr. Smith's petition for post-conviction relief under Ohio Revised Code § 2953.21 (Return of Writ, Doc. No. 10, Ex. 44, PageID 435-451.) It was denied by the trial court and that denial was summarily affirmed by the court of appeals. *Id.* at Ex. 56.

The governing standard for ineffective assistance of counsel is found in *Strickland v. Washington*, 466 U.S. 668 (1984):

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes

> both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

466 U.S. at 687. In other words, to establish ineffective assistance, a defendant must show both deficient performance and prejudice. *Berghuis v. Thompkins,* ___ U.S. ___, ___, 130 S.Ct. 2250, 2255 (2010), *citing Knowles v. Mirzayance,* 556 U.S.111 (2009).

With respect to the first prong of the *Strickland* test, the Supreme Court has commanded:

> Judicial scrutiny of counsel's performance must be highly deferential. . . . A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."

466 U.S. at 689.

As to the second prong, the Supreme Court held:

> The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to overcome confidence in the outcome.

466 U.S. at 694. *See also Darden v. Wainwright,* 477 U.S. 168 (1986); *Wong v. Money,* 142 F.3d 313, 319 (6th Cir. 1998); *Blackburn v. Foltz,* 828 F.2d 1177 (6th Cir. 1987). "The likelihood of a different result must be substantial, not just conceivable." *Storey v. Vasbinder,* 657 F.3d 372 (6th Cir. 2011), *quoting Harrington v. Richter,* 562 U.S. ___, 131 S. Ct. 770, 792 (2011).

While the court of appeals' analysis is not extended, it is also not an objectively unreasonable

application of *Strickland*. The two witnesses whose affidavits were tendered with the post-conviction petition were not eyewitnesses to the crime. Their testimony that Gorley was known to carry a knife was therefore tangential. If it had been shown that Roger and Ricky Smith knew he carried a knife (which could not have come into evidence without their testimony), that would not necessarily be helpful because it would emphasize they knew they had to attack him hard and fast, two on one, before he could draw his knife. The knife which was identified as the murder weapon had a serrated blade like a steak knife, not the kind of knife typically carried by a person who "carries a knife." Finally, if these witnesses or one of them had testified that there was a previous confrontation, that would have added to the motivation of the Smith brothers for the fight. Ground Five should therefore be dismissed with prejudice.

## Conclusion

Based on the foregoing analysis, it is respectfully recommended that the Petition be dismissed with prejudice. Because reasonable jurists would not disagree with this conclusion, Petitioner should be denied a certificate of appealability and the Court should certify that an appeal is not taken in objective good faith.

March 1, 2012.

s/ **Michael R. Merz**
United States Magistrate Judge

# NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F). Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).